IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ADDISON CARTER, et al., Individually and
for Others Similarly Situated,
                  Plaintiffs,

v.                                             Civil Action No. 3:20-cv-152

DOMINION ENERGY, INC., et al.,
                  Defendants.

## MEMORANDUM ORDER

      This matter comes before the Court on a motion to dismiss or transfer filed by Arc Energy

Services, Inc. ("Arc Energy"), and Roger D. Phillips, II. (Dk. No. 38.)[1] The plaintiffs, Addison

Carter and Tyrone Beaver, worked as specialty welders at the Bear Garden Power Generation

Station ("Bear Garden").[2] The plaintiffs were fired from their positions and banned from various

worksites after colleagues harassed them. They have sued Dominion Energy, Inc. ("Dominion"),

Virginia Electric and Power Company ("VEPCO"), Frenzelit, Inc. ("Frenzelit"), Arc Energy,

Christopher Dykes, Joey Brown, Tom O'Brien, Phillips, and William F. Reed, individually and on

behalf of others similarly situated, asserting various federal and state law claims.[3]

---

[1] This case involves multiple defendants. The other defendants indicate in their respective motions to dismiss that they join in the motion to transfer but also seek dismissal on other grounds. (*See* Dk. Nos. 43, 47, 50, 58.) Thus, this Memorandum Order resolves those motions to the extent that they ask the Court to dismiss or transfer the case based on venue. In all other respects, the defendants' motions to dismiss remain pending.

[2] Bear Garden is located in Buckingham County, Virginia, part of the U.S. District Court for the Western District of Virginia, Lynchburg Division. *See* W.D. Va. Local General Rule 1.

[3] Carter is a Connecticut citizen, and Beaver is a South Carolina citizen. Dominion and VEPCO are Virginia citizens, with their headquarters in Richmond, Virginia. Frenzelit is a North Carolina corporation. Arc Energy is a South Carolina corporation. The plaintiffs do not allege the citizenship of the individual defendants but explain that they can be served at the following locations: (1) Dykes, in Georgia or at Bear Garden; (2) Brown, in North Carolina; (3) Reed, at

Relevant here, the defendants move to dismiss for improper venue or to transfer this case to the Western District of Virginia. Although the plaintiffs have filed this case in a proper venue, the interest of justice weighs strongly in favor of transfer. Accordingly, the Court will grant in part the defendants' motion and will transfer this case to the Western District of Virginia, Lynchburg Division.

## I. FACTS ALLEGED IN THE AMENDED COMPLAINT[4]

Dominion and its wholly owned subsidiary, VEPCO, operate Bear Garden. Dominion and VEPCO contract with Arc Energy and Frenzelit for labor at the worksite. Dominion and VEPCO manage these labor contracts and make hiring decisions from their offices in Richmond, Virginia. They also maintain various anti-discrimination and anti-workplace-violence policies that apply to all employees, contractors, agents, or job applicants on Dominion and VEPCO worksites.

Arc Energy and Frenzelit hired the plaintiffs to fulfill labor supply contracts at Bear Garden. On March 19, 2019, Beaver and Carter reported to Bear Garden. They were the only African American skilled laborers on site. The rest of their work crew was white.

On their first day, the plaintiffs attended training, which included information about Dominion's "Zero Tolerance" policy against discrimination. (Am. Compl. ¶ 62.) Almost immediately after they left the training, however, the plaintiffs experienced multiple instances of racial discrimination. For example, Jeremy Helmstetler, a supervisor, introduced Carter to the crew as "Toby," a slave character on a television show.

---

Bear Garden or at the Bremo Power Station in Bremo Bluff, Virginia; (5) O'Brien, in North Carolina; and (6) Phillips, in South Carolina.

[4] The Court only recites the facts necessary to resolve Arc Energy's and Phillips' motion to dismiss or transfer.

2

The plaintiffs also experienced several racially charged encounters with Dykes, a white crew member. For instance, Dykes grabbed Carter by his testicles and called him a "pretty young black boy." (*Id.* ¶ 65.) Dykes also shoved the plaintiffs several times and called "[their] species . . . lazy." (*Id.* ¶ 79.) Dykes referred to the plaintiffs by various derogatory terms and intentionally interfered with the plaintiffs' work. No one intervened or tried to stop Dykes.

On March 26, 2019, Dykes tried to fight Carter and "whip [Carter] like they used to do the slaves." (*Id.*) Brown, a supervisor, told them to take it outside. Later, Brown told the plaintiffs to leave the worksite. The plaintiffs complained about the discrimination to an on-site human resources employee; Reed, the station director; and Frenzelit and Arc Energy employees, including Phillips and O'Brien. Nobody allowed the plaintiffs to file written complaints, and the defendants did not investigate the discrimination. When an attorney called Bear Garden to lodge a complaint on behalf of the plaintiffs, the employee who answered the phone laughed her off.

The plaintiffs eventually lost their jobs and were banned from all Dominion sites. The plaintiffs later heard that several witnesses made false statements about the incidents, blaming Carter and Beaver for the altercations.

The plaintiffs assert twelve claims: racial discrimination in selection, hiring, and retention on behalf of a class in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964 (Counts One and Two); unlawful discrimination in the right to contract in violation of § 1981 (Count Three); retaliation in violation of § 1981 and Title VII (Counts Four and Six); disparate treatment and hostile work environment based on race in violation of Title VII (Count Five); unlawful interference with the right to contract in violation of § 1981 (Count Seven); conspiracy to violate civil rights to freely contract in violation of 42 U.S.C. § 1985 (Count Eight); defamation/respondeat superior (Count Nine); insulting words/respondeat superior in violation of

Virginia Code § 8.01-45 (Count Ten); common law battery/respondeat superior (Count Eleven);

and common law assault/respondeat superior (Count Twelve).

## II. DISCUSSION[5]

The defendants move to dismiss for improper venue or, in the alternative, transfer this case

to the Western District of Virginia. They argue that the events giving rise to the plaintiffs' claims

have little connection to the Eastern District of Virginia.

### A. Title VII Venue Provision

When considering whether a plaintiff has filed a case in the proper venue, courts normally

begin with the general venue provision. *See* 28 U.S.C. § 1391. Because the plaintiffs have asserted

Title VII claims, however, the Court must begin with Title VII's venue provision. *See Harding v.*

*Williams Prop. Co.*, 163 F.3d 598, at *2 n.5 (4th Cir. 1998) (per curiam) (table decision)

(explaining that the Title VII venue provision "overrides the general venue statement at 28 U.S.C.

§ 1391").

Under Title VII, a claim

> may be brought in any judicial district in the State in which the unlawful
> employment practice is alleged to have been committed, in the judicial district in

---

[5] When a party objects to venue based on Federal Rule of Civil Procedure 12(b)(3), "the plaintiff generally has the burden to show that venue is proper." *Colonna's Shipyard, Inc. v. City of Key West*, 735 F. Supp. 2d 414, 416 (E.D. Va. 2010). Rule 12(b)(3) only allows dismissal "when venue is 'wrong' or 'improper.'" *See Atl. Marine Constr. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013). If a plaintiff has brought an action in a proper venue, a defendant may move to transfer the case to another proper venue "[f]or the convenience of parties and witnesses, [and] in the interest of justice." 28 U.S.C. § 1404(a). A court must make an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964). Under § 1404, the moving party bears the burden of showing that the balance of factors strongly favors transfer. *See Fitzgibbon v. Radack*, 597 B.R. 836, 841 (E.D. Va. 2019). "[T]he law is clear that in determining whether venue for a putative class action is proper, courts are to look only at the allegations pertaining to the named representatives." *See Newbauer v. Jackson Hewitt Tax Serv. Inc.*, No. 2:18cv679, 2019 WL 1398172, at *8 (E.D. Va. Mar. 28, 2019) (quotations and alterations omitted). Thus, the Court will only focus on the allegations as they relate to the named plaintiffs, not the class.

which the employment records relevant to such practice are maintained and administered, or in the judicial district in which the aggrieved person would have worked but for the alleged unlawful employment practice, but if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office.

42 U.S.C. § 2000e-5(f)(3).

Here, the plaintiffs allege that they experienced race-based disparate treatment, a hostile work environment, and retaliation at Bear Garden. Because the alleged unlawful employment practices took place in Virginia, venue is proper in both the Eastern District of Virginia—where the plaintiffs filed this case—and the Western District of Virginia—where the defendants ask the Court to transfer the case. *See* § 2000e-5(f)(3).

Although § 2000e-5(f)(3) limits where a plaintiff may file a case involving Title VII claims, it does not prohibit a court from transferring a case involving Title VII claims from one proper venue to another. *See Taylor v. Shinseki*, 13 F. Supp. 3d 81, 89-92 (D.D.C. 2014). Thus, the Court will next consider whether to transfer the case to the Western District of Virginia pursuant to 28 U.S.C. § 1404(a).

### B. Section 1404 Factors

Under § 1404, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." § 1404(a). When deciding whether to transfer venue—a decision that "is committed to the district court's sound discretion"—the Court makes two inquiries: "(1) whether the claims might have been brought in the transferee forum, and (2) whether the interest of justice and convenience of the parties and witnesses justify transfer to that forum." *Koh v. Microtek Int'l, Inc.*, 250 F. Supp. 2d 627, 630 (E.D. Va. 2003). The moving party "bears the burden of showing that transfer is proper" and "must also demonstrate that transfer does more than merely shift the

5

inconvenience to the other party." *JTH Tax, Inc. v. Lee*, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007) (quotations omitted).

As explained above, the plaintiffs could have filed this case in the Western District of Virginia. Thus, the Court must next consider whether the interest of justice and convenience warrants transfer.

Courts weigh four factors to decide whether to transfer a case pursuant to § 1404: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Tr. of the Plumbers & Pipefitters Nat'l Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). For the reasons set forth below, the § 1404(a) factors weigh strongly in favor of transfer.

## 1. *The Plaintiffs' Choice of Forum*

The first factor weighs in favor of transfer. Normally "a plaintiff's choice of venue is entitled to substantial weight in determining whether transfer is appropriate." *Id.* (quotations omitted). But "[t]he weight given the plaintiff's choice varies in proportion to the connection between the forum and the cause of action." *GTE Wireless, Inc. v. Qualcomm, Inc.*, 71 F. Supp. 2d 517, 519 (E.D. Va. 1999). A court, therefore, does not give the plaintiff's choice of forum substantial weight when the "plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum." *Id.*

Here, neither plaintiff lives in Virginia and the causes of action bear little relation to the Eastern District of Virginia. Nearly every allegation in the complaint—including the discrimination training, interactions with coworkers and supervisors, and efforts to file discrimination claims—took place in the Western District of Virginia. (Dk. No. 39, at 6-8). An on-site manager told the plaintiffs that they were banned from all Dominion sites. Frenzelit and

Arc Energy, non-Virginia companies, fired them. Further, although Dominion maintained a "zero tolerance" policy against discrimination and workplace violence, the plaintiffs allege that specific managers and employees at Bear Garden failed to follow those policies.

Moreover, the plaintiffs' argument that Dominion's and VEPCO's Richmond-based human resources personnel "control . . . workplace issues for joint employment purposes" and that any investigation of the plaintiffs' discrimination claims and terminations would have occurred in Richmond does not tip the balance in their favor. (Dk. No. 66, at 8.) Employees located at Bear Garden did not allow the plaintiffs to file a complaint. When an attorney tried to lodge a formal complaint, she did so with an employee at Bear Garden. The plaintiffs do little more than speculate that personnel in Richmond knew anything about the events at Bear Garden or the plaintiffs' efforts to file a formal complaint.

In any event, that Richmond-based personnel broadly control employees at Bear Garden and manage labor contracts with other companies does not sufficiently connect the plaintiffs' claims to the Eastern District of Virginia when the conduct at issue occurred elsewhere. *Cf. Adhikari v. KBR, Inc.*, No. 1:15-cv-1248, 2016 WL 4162012, at *5 (E.D. Va. Aug. 4, 2016) ("[T]he broad oversight occurring in this District is not a substantial part of [the plaintiff's claims] because [the] [p]laintiffs suffered their harms exclusively abroad, the individuals imposing those harms and the individuals directly responsible for preventing those harms were located abroad, and the policies emanating from this District enabled, rather than directed those abuses."). At best, this case has a tenuous connection to the Eastern District of Virginia. Accordingly, the Court gives little weight to the plaintiffs' choice of forum.

## 2. *Convenience of the Parties and Witnesses*

The second and third factors weigh strongly in favor of transfer. "The party convenience factor includes assessment of the ease of access to sources of proof, the cost of obtaining the attendance of witnesses, and the availability of compulsory process." *Samsung Elecs. Co. v. Rambus, Inc.*, 386 F. Supp. 2d 708, 717 n.13 (E.D. Va. 2005). Courts also look at the residence of the parties. "[W]hen plaintiffs file suit in their home forum, convenience to parties rarely, if ever, operates to justify transfer." *See JTH Tax*, 482 F. Supp. 2d at 738. Further, "[t]ransfer is not appropriate merely to shift the hardships" from one side to the other. *Affinity Memory & Micro, Inc. v. K & Q Enters., Inc.*, 20 F. Supp. 2d 948, 955 (E.D. Va. 1998).

A number of factors support transfer. Neither plaintiff lives in Virginia, so the Eastern District of Virginia is not their home forum. Thus, transferring this case will not inconvenience them. Although Dominion and VEPCO reside in the Eastern District of Virginia, nearly every alleged act or omission occurred in the Western District of Virginia. Thus, any evidence other than items located in Dominion's and VEPCO's Richmond offices is most likely located in the Western District of Virginia.

Further, the plaintiffs suggest in a conclusory fashion that Dominion will designate Richmond-based employees for corporate depositions and that relevant personnel and human resources records are located in Richmond. But because the events occurred at the Bear Garden worksite, it is likely that more party and non-party witnesses are located in the Western District of Virginia. Thus, the convenience of the parties and the witnesses weighs strongly in favor of transfer.[6]

---

[6] To the extent that the plaintiffs argue that counsel for Dominion, VEPCO, and Arc Energy are located in Richmond, "[i]t is well-settled that convenience for a party's litigation counsel is

### 3. *Interest of Justice*

The interest of justice also weighs in favor of transfer. "The interest of justice encompasses public interest factors aimed as 'systemic integrity and fairness.'" *Samsung*, 386 F. Supp. at 721 (quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). Courts consider "the pendency of a related action; the court's familiarity with the applicable law; docket conditions; access to premises that might have to be viewed; the possibility of unfair trial; the ability to join other parties; and the possibility of harassment." *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 991, 996 (E.D. Va. 2011). Courts also have an "interest in having local controversies decided at home." *Samsung*, 386 F. Supp. 2d at 715. The parties argue that several of these factors bear on the Court's analysis.

The plaintiffs contend that this Court previously decided a related action involving Dominion's joint employer status, thereby making the Eastern District of Virginia a more appropriate venue. *See, e.g.*, *Sony Music Entm't v. Cox Commc'ns, Inc.*, No. 1:18-cv-950, 2018 WL 6059386, at *3 (E.D. Va. Nov. 19, 2018) (noting that judicial economy weighed against transfer when a pending action in the same district involved "the same [d]efendants and similar claims"). In *Hall v. Dominion Energy, Inc.*, the plaintiffs sued Dominion, VEPCO, and a company not involved in this case for failing to pay overtime wages under the Fair Labor Standards Act ("FLSA"). No. 3:18-cv-321 (E.D. Va. May 14, 2018). In denying a motion for a protective order, the Court explained that the defendants may qualify as joint employers under the FLSA. *See id.*, Dk. No. 65. The named plaintiffs, however, resided in this district, and neither party challenged venue. *See id.*, Dk. No. 1 ¶ 7.

---

not a factor to be considered in the transfer analysis." *Heinz Kettler GMBH & Co. v. Razor USA, LLC*, 750 F. Supp. 2d 660, 669 (E.D. Va. 2010).

Here, not only does the Court decline to rule on the parties' joint employer status at this stage, but also the Court's involvement in *Hall* does not weigh in favor the plaintiffs. *Hall* proceeded on distinctly different facts against a different co-defendant for a different cause of action, and the Court did not decide a motion to dismiss or for summary judgment in that case. *Cf.* *Samsung*, 386 F. Supp. 2d at 722 ("Where a party has previously litigated a case involving *similar issues and facts*, a court in that district will likely be familiar with the facts of the case. As a matter of judicial economy, such familiarity is highly desirable." (quotations and alterations omitted) (emphasis added)). Moreover, the Western District of Virginia has as much experience as this Court with claims involving federal and Virginia law, and is equally well positioned to decide questions regarding joint employer liability. Transfer, therefore, will not undermine judicial economy.

Moreover, other interest of justice considerations weigh in favor of transfer. Bear Garden is located in the Western District of Virginia, so all premises that the parties might need to view are located in that district. As discussed above, most evidence other than records located at Dominion's and VEPCO's Richmond office is likely located at that site. Further, the Western District of Virginia has an interest in having a "local controvers[y] decided at home." *Id.* at 715. Thus, transferring this case to the Western District of Virginia serves the interest of justice.

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court GRANTS IN PART the defendants' motion to dismiss or transfer. (Dk. No. 38.) Because the plaintiffs have filed this case in a proper venue, the Court declines to dismiss this case. *See Atl. Marine Constr. Co.*, 571 U.S. at 55. Instead, the Court TRANSFERS this case to the Western District of Virginia, Lynchburg Division. *See* § 1404. The

Court takes no position on the remaining motions to the extent that they request dismissal of specific claims on other grounds.

It is so ORDERED.

Let the Clerk send a copy of this Order to all counsel of record.

Date: 27 Jul 2020
Richmond, VA

/s/
John A. Gibney, Jr.
United States District Judge

11